CITY OF LINCOLN, NEBRASKA,
A MUNICIPAL CORPORATION, APPELLANT, V.
NEBRASKA LIQUOR CONTROL COMMISSION ET AL.,
APPELLEES,
JAX, INC., INTERVENOR-APPELLANT.

304 N.W.2d 922

Filed April 24, 1981.   No. 43425.

Dana W. Roper, Assistant City Attorney, for appellant City.

James E. Ryan for intervenor-appellant Jax.

Paul L. Douglas, Attorney General, and Terry R. Schaaf for appellee.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

KRIVOSHA, C.J.

The appellant, City of Lincoln (City), and the intervenor, Jax, Inc.. (Jax), appeal from a judgment entered by the District Court for Lancaster County, Nebraska, finding that the Nebraska Liquor Control Commission did not abuse its authority when, on March 29, 1979, it issued a retail off-sale beer license to one Leonard J. Stransky and Maynard R. Brummer, doing business as "The Pop Shoppe and Beer Stop," pursuant to Neb. Rev. Stat. § 53-131 (Reissue 1978). Jax obtained leave to intervene on the basis that it operated a similar retail establishment some 200 feet from where the new license was to be located. We believe the trial court was correct, and affirm the judgment entered by it.

The record discloses that the Nebraska Liquor Control Commission (the commission), on October 20, 1978, received an application for a beer, off-sale only, license filed on behalf of Leonard J. Stransky and Maynard R. Brummer, a partnership, doing business under the name of "The Pop Shoppe and Beer Stop." The establishment was to be located at 48th and Van Dorn in the city of Lincoln, Nebraska. The application was submitted on a commission form which is used by applicants for all types of liquor licenses, including manufacturers' and wholesalers' liquor licenses, in addition to retail licenses such as the one involved

in this case. City maintains that this was not an application for a new license pursuant to § 53-131, but rather for the transfer of a license previously held by Darrell L. Stanard, and therefore is governed by the provisions of Neb. Rev. Stat. § 53-129 (Reissue 1978) which provides, in effect, that once a license has been granted it may not be relocated without the approval of the local governing body. In the instant case the city council of the city of Lincoln, "the local governing body," denied approval for such transfer. We disagree with the City's position that the application was for a transfer and not for a new license.

In the first instance, the position of both the City and Jax is contrary to our previous holdings. In the case of *City of Lincoln v. Nebraska Liquor Control Commission*, 181 Neb. 277, 147 N.W.2d 803 (1967), we had occasion to review the purpose of § 53-129 and declared that the purpose of this section is to provide a short procedure for a change of location in the business of a liquor licensee when neither the commission nor the municipality involved objects thereto.

The meaning and purpose of § 53-129 becomes clear when we recognize that under the laws of the State of Nebraska a liquor license is issued to a named licensee for a named location. It may not be used by any entity other than that to whom it has been issued, nor may the license be used in any other premises except that which is specifically noted in the license. If, then, a named licensee desires to relocate the license, it may do so under the provisions of § 53-129 by making application to either the commission or the local governing body and, when approved by the local governing body, may move to the new location. In this respect, the relocation of a license from its issued premises to new premises is dependent upon approval by the local governing body. If the local governing body disapproves, then the license may not be relocated. However, this does not mean that another license may not be sought under § 53-131. That was the very issue

in *City of Lincoln v. Nebraska Liquor Control Commission, supra.* There we held that if the licensee to whom the license had previously been issued could not obtain the approval of the local governing body to transfer, it could, nevertheless, make application to the commission for a new license under the provisions of § 53-131. In that instance, the recommendation of the local governing body is only advisory and the commission may issue a license even if the local governing body objects.

But the major difficulty with the argument made by City and Jax, and a difficulty which perhaps arises too often in matters involving liquor licenses, is that the City and Jax characterize this matter as a "transfer." The simple fact of the matter is that there is no statutory authority under Nebraska law to "transfer" a liquor license. We have previously held that a liquor license is a purely personal privilege, does not constitute property, and vests no property rights in a licensee which can be transferred. See *Bali Hai', Inc. v. Nebraska Liquor Control Commission,* 195 Neb. 1, 236 N.W.2d 614 (1975).

Under the statutes of Nebraska, liquor licenses are issued to a single entity and, when so issued, may not be used by anyone else or transferred to anyone else. As we have already indicated, the only "transfer" ever involved with a liquor license is really the "relocation" of the license by the existing licensee.

While the City and Jax argue that the application was originally made for the "transfer" of a license, the record does not legally support that position. It is true that the parties did, on occasion, use the word "transfer." Nevertheless, an examination of the application filed with the commission discloses that the application was filed by Maynard R. Brummer and Leonard J. Stransky, a partnership, doing business as "The Pop Shoppe and Beer Stop." At the time that the application was filed on October 20, 1978, Stransky and Brummer did not have any legal interest or right

in a license previously issued to Stanard and therefore could not have been making application to relocate a license under the provisions of § 53-129.

The provisions of § 53-129 are absolutely clear, and provide in part: *"After such license has been granted for particular premises,* the commission, with the approval of the local governing body, and upon proper showing, may endorse upon the license permission to abandon the premises therein described and remove therefrom to other premises approved by him or it, but in order to obtain such approval *the retail licensee* shall file with the local governing body a request in writing, and a statement under oath which shall show that the premises to which removal is to be made comply in all respects with the requirements of this act. No such removal shall be made by any *such licensee* until his said license has been endorsed to that effect in writing both by the local governing body and by the commission." (Emphasis supplied.) The statute is clear that it applies only to an existing licensee seeking to relocate his license. Neither Stransky nor Brummer, nor "The Pop Shoppe and Beer Stop," are within the meaning of licensee described in § 53-129.

The City and Jax urge us, in effect, to read the statute as though a new licensee may be created under the provisions of § 53-129 by a transfer. The statute, however, is clear and unambiguous and not open to interpretation.

A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. See,

*Ragland v. Norris P. P. Dist., ante* p. 492, 304 N.W.2d 55 (1981); *O'Neill Production Credit Assn. v. Schnoor, ante* p. 105, 302 N.W.2d 376 (1981); *Bachus v. Swanson,* 179 Neb. 1, 136 N.W.2d 189 (1965). It matters not at all what the parties may have believed to be the case nor what the counsel assumed to be the case. A statute cannot be amended by the consent of the parties or by their misunderstanding of the statute.

Having therefore determined that the action involved herein was an application for a new license and not the relocation of an existing license, the applicable statute must be § 53-131 and the approval of the city council was not mandatory to the action of the commission, but only advisory. The only remaining question that we need determine then is whether the granting of the license by the commission was an abuse of discretion.

We have held that the Nebraska Liquor Control Commission has broad discretion in determining whether applications for licenses should be granted or denied and courts are without authority to interfere with that discretion unless it has been abused. See *Harrigfeld v. Nebraska Liquor Control Commission,* 203 Neb. 741, 280 N.W.2d 61 (1979). Moreover, the courts, in reviewing decisions of the Nebraska Liquor Control Commission, do not exercise independent judgment on fact and policy, but must give due deference to the decisions made by the commission if the same are based upon evidence in the record. See *72nd Street Pizza, Inc. v. Nebraska Liquor Control Commission,* 199 Neb. 729, 261 N.W.2d 614 (1978).

City and Jax maintain that the commission abused its discretion in that there is no showing of need and there is evidence that the issuance of the license will create a traffic problem.

Insofar as the matter of need is concerned, we believe we have already addressed that issue in *Joe & Al's IGA, Inc. v. Nebraska Liquor Control Commission,* 203 Neb. 176, 182-83, 277 N.W.2d 693, 697

(1979), wherein we said: "Absence of need alone is not a sufficient reason to deny an otherwise proper application for a liquor license." The reason for such a position is obvious. There are those who would maintain there is never any need for any liquor establishment while others would maintain there are never enough.

With regard to the matter of traffic, the evidence simply does not support the position urged by City and Jax. A member of the Lincoln Police Department testified that the proposed licensed location was already a heavily traveled area. He therefore concluded that the issuance of the license would create even more traffic problems. There was, however, no evidence to support that conclusion. The area involved abuts a main thoroughfare in the city of Lincoln, Nebraska, and is bordered on both sides by minishopping areas. On cross examination he was asked to tell how many cars he thought would be added if the commission saw fit to grant the license. He testified in response to that question, "There would be no way that I could project the increase in traffic." He then attempted to surmise that the existence of the license would cause "crisscrossing" patterns. Yet, there is no evidence to support the conclusion that the crisscrossing patterns would not exist absent the liquor license in view of the fact that both sides of the street are occupied by these minishopping areas. As a matter of fact, the officer conceded that the crisscrossing was already occurring. It is apparent from the record that the area may indeed have a traffic problem, but the record does not reveal that it is one which would in any way be affected significantly by the addition of another liquor license.

Therefore, we cannot say that the commission was in any manner arbitrary in granting the license, and accordingly we are without authority to overrule its action. The trial court properly recognized its limitations by affirming the action of the commission and

we, in turn, must affirm the action of the District Court. The judgment is affirmed.

AFFIRMED.