B & R Stores, Inc., a Nebraska corporation, appellee and cross-appellee, v. Nebraska Liquor Control Commission, appellee and cross-appellant, and City of Lincoln, appellant.

497 N.W.2d 654

Filed March 12, 1993.    Nos. S-90-517, S-90-518, S-90-519, S-90-520.

William F. Austin, Lincoln City Attorney, and Joel D. Pedersen for appellant.

M.J. Bruckner and Paul J. Peter, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee B & R Stores.

Robert M. Spire, Attorney General, and Marie C. Pawol, and, on brief, Donald E. Hyde for appellee Liquor Control Commission.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

White, J.

Based on the recommendation of appellant City of Lincoln (Lincoln), appellee B & R Stores, Inc. (B & R) was denied four liquor licenses by appellee-cross-appellant Nebraska Liquor Control Commission (commission). Because Lincoln filed the first notice of appeal in the district court, the commission is an appellee and cross-appellant. See Neb. Ct. R. of Prac. 1C and 1E (rev. 1992). The district court reversed the commission, ordering it to issue the four licenses. We affirm.

B & R's application process occurred during the same "window" period discussed in *Hy-Vee Food Stores v. Nebraska Liquor Control Comm., ante* p. 752, 497 N.W.2d 647 (1993) (case nos. 90-513, 90-514, 90-515 and 90-516), decided today. For the reasons articulated in that decision, our review is

de novo on the record. The facts, evidence, and the decisions of Lincoln and the commission are much the same in B & R's appeals as they were in *Hy-Vee, supra.* We will thus follow the analysis set forth in *Hy-Vee,* noting any factual discrepancies between the records in the cases.

On January 11, 1989, B & R applied to the commission for one class "B" and three class "D" liquor licenses. A class D license permits the retailer to sell liquor and beer, in the original package, for off-premises consumption. A class B license permits sale of beer only, in the original package, for consumption off the premises. Neb. Rev. Stat. § 53-124(5)(b), (d) (Reissue 1984). The Lincoln City Council, following a hearing, recommended to the commission that the licenses be denied.

The commission followed Lincoln's recommendation and denied the licenses. In its April 19, 1989, order, as it had in *Hy-Vee,* the commission determined that B & R had satisfied the requirements set forth in Neb. Rev. Stat. § 53-132(2)(a), (b) and (c) (Reissue 1984). However, the commission found that B & R did not satisfy the requirements of subsection (2)(d) of the statute. The commission based its finding on Lincoln's recommendation of denial.

On appeal, the Lancaster County District Court reversed the commission, ordering issuance of the licenses. Lincoln and the commission then appealed to this court.

Restated, Lincoln argues that the district court erred by: (1) exceeding its lawful scope of review; (2) making findings contrary to the evidence and the law; (3) finding that Lincoln's denial was based on a policy against issuing licenses to certain outlets; (4) reversing the commission's order and ordering that the licenses be issued; and (5) overruling Lincoln's objection to "exhibit 6" and thereby accepting new evidence into the record. For the reasons set forth in *Hy-Vee, supra,* we need not address Lincoln's first three assignments of error. Before reviewing the propriety of reversing the commission, however, we address two other matters.

Lincoln's fifth assignment of error is completely without merit. The district court admitted no "exhibit 6" and Lincoln has not described what the allegedly improper evidence was.

Furthermore, our standard of review requires us to consider only the record before the commission, and thus we will not consider any evidence that might have been erroneously added by the district court. See *Hy-Vee, supra.*

A second matter involves an allegation of error by the commission. The commission alleges that the bill of exceptions was offered at the district court level without the separate envelope containing exhibits. We first note that the record before us contains the exhibits that were before the commission, including the evidence and testimony from the city council hearing. In addition, we will not consider an alleged error that has not been both assigned and discussed in the brief of the party claiming that prejudicial error has occurred. *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992). Neither Lincoln nor the commission has assigned this point as error and therefore we do not consider it.

The record clearly establishes that B & R has met the first three requirements of § 53-132. We thus turn to the factors set forth in § 53-132(3) as they bear on whether the "public convenience and necessity" requires issuance of the licenses. As in *Hy-Vee, supra*, we consider the factors in the order listed, except that we conclude with subsection (3)(a), the recommendation of the local governing body.

At the commission hearing, the Lincoln Package Beverage Association protested issuance of the licenses. In addition, at the city council hearing seven individuals spoke against issuing the licenses, including representatives from the Package Beverage Association, Mothers Against Drunk Driving, and the Nebraska Council on Alcohol and Drug Education. However, one person at the council hearing spoke in favor of issuing the licenses. Furthermore, B & R presented over 4,000 signatures in favor of liquor and beer being sold at their stores.

Statistics as to Lincoln's population growth were also presented to the commission—the same figures presented in *Hy-Vee.* Evidence was also offered regarding the existence of other retail licenses within one mile of each location. At the time of the city council hearing, the one-mile-radius circle around the store at 130 North 66th Street was served by three class D and ten class C licenses. The area around the store at 5500 South

56th Street was served by one class D and four class C licenses. The area around 233 North 48th Street was served by three class D and twelve class C licenses. Finally, the area around the store at 4200 South 27th Street (the store seeking the class B license) was served by one class C and two class D licenses. Further evidence was presented to the commission and the city council indicating that in 1989 Lincoln had one class B or D license per 3,557 people—the lowest such ratio among the 17 largest cities in Nebraska.

The evidence showed that substantial motor vehicle traffic passed by each proposed licensed premises. The record indicated that the number of cars passing each location daily was 15,000 by the store at 4200 South 27th Street; 12,700 by 5500 South 56th Street; 20,000 by 233 North 48th Street; and a combined 47,000 by the store at 130 North 66th Street. The evidence also indicated that the neighborhoods around the stores were zoned as either "planned regional business" or "local business" districts and were bordered by predominantly commercial areas.

No evidence was presented as to the adequacy of existing law enforcement or the sanitary conditions on or about each location. With regard to subsection (3)(e), whether the proposed business would be consistent with the public interest, the evidence was in equipoise. Two University of Nebraska professors testified before the commission and voiced concern that increased availability of alcohol in convenient shopping locations could increase consumption. However, testimony from the president of B & R indicated that the stores would carefully train the employees who would sell the alcohol. Furthermore, the testimony indicated that B & R would provide adequate, economical, and efficient service to purchasers of alcoholic beverages.

We thus turn to § 53-132(3)(a), the recommendation of the local governing body. In its recommendation of denial to the commission, Lincoln stated the same seven reasons that it had stated in the *Hy-Vee* cases, namely (1) the area around each location was adequately served by existing licenses; (2) the Lincoln Police Department's objections; (3) the applicant did not demonstrate a need for the licenses or a true increase in

service to the public; (4) the applicant did not demonstrate an improvement to the neighborhood or a betterment to the community; (5) Lincoln's existing population and projected growth did not warrant the issuance of the licenses; (6) the present and future public convenience and necessity did not indicate a need for the licenses; and (7) the grocery stores did not comply with Lincoln's "separate and distinct business activity" ordinance. We again address these factors in order.

As we pointed out in *Hy-Vee*, Lincoln's claim of "adequate service" in the surrounding areas appears purely arbitrary. Lincoln provided no evidence of population in each area, nor did it distinguish between the different locations or the types of licenses serving each area.

Lincoln also cites the "objections raised by the Lincoln Police Department" as reason for denying the licenses. However, the record is devoid of any objections by the Lincoln Police Department relating to the four stores seeking the licenses.

With regard to demonstration of public service or community betterment, the record again supports issuance of the licenses. B & R has provided efficient and economical service to Lincoln, with a recent study indicating that B & R provides 38% of the city's total grocery supply. B & R also employs over 750 people in Lincoln, with an annual payroll of over $8 million.

The figures relating to population growth remain the same as those relied on by the city in *Hy-Vee*. The number of liquor licenses in Lincoln increased from 172 licenses in 1980, to 211 active licenses in September of 1988—an increase of 2.5 percent per year. However, the number of class D licenses increased by only two during that period, and the number of class B licenses fell from one to zero. Furthermore, Lincoln's conclusory statement that "public convenience and necessity would not indicate that this license should be issued" is as little help to our inquiry as it was in *Hy-Vee*.

We again come to the conclusion that the major reason for the city's recommendation of denial was the "separate and distinct" ordinance codified at Lincoln Mun. Code § 6.08.100 (1986). As we noted in *Hy-Vee*, the ordinance was an improper

ground for denial of the licenses.

Furthermore, statements made by Lincoln's city council members indicated that the recommendation of denial was based in large part on an aversion to granting licenses to stores that would make the purchase of alcohol convenient. However, a lawful justification for refusing to grant a liquor license must exist; purely arbitrary treatment or classification cannot be sustained. *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 905, 492 N.W.2d 7 (1992).

The evidence before the commission supports granting B & R the licenses. That fact, combined with over 4,000 signatures favoring the sale of liquor by B & R, convinces us that B & R has met the requirements of § 53-132(2)(d). Lincoln's arbitrary recommendation of denial does not justify denial of B & R's otherwise valid licenses. See *Hy-Vee, supra.* We therefore affirm the district court's reversal of the commission and its order that the licenses be issued to B & R.

AFFIRMED.